**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SHELLY DAUB, ) | CASE NO. 5:23-cv-01107 |
| ) | |
| Plaintiff, ) | JUDGE DAVID A. RUIZ |
| ) | |
| v. ) | |
| ) | |
| MARTIN O'MALLEY, ) | |
| *Acting Comm'r of Soc. Sec.*, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| Defendant. ) | |

This matter is before the Court on the Report and Recommendation of Magistrate Judge Amanda M. Knapp. R. 11. On June 1, 2023, Plaintiff Shelly Daub filed her Complaint, (R. 1), challenging the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Disabled Widow's Benefits. Pursuant to Local Rule 72.2, the case was referred to the Magistrate Judge.

On May 8, 2023, the Magistrate Judge issued her Report and Recommendation (R&R). The Magistrate Judge recommends that the Court vacate and remand the Commissioner's decision for proceedings consistent with the Report and Recommendation. (R. 11). The Commissioner filed objections within the fourteen-day deadline. (R. 12). Plaintiff filed a response. (R. 13).

For the reasons stated below, Commissioner's objections, (R. 13), are overruled and the Report and Recommendation, (R. 11), is adopted.

## I. Standard of Review

When a magistrate judge submits a Report and Recommendation, the Court is required to conduct a de novo review of those portions of the Report to which an objection has been made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Rule 72.3(b). Objections to the Report and Recommendation must be specific, not general, to focus the court's attention upon contentious issues. *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). The primary issue then becomes "whether [the Commissioner's decision] is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g). The court's review of the Commissioner's decision in the case at bar is limited to determining whether substantial evidence, viewing the record as a whole, supports the findings of the Administrative Law Judge (ALJ). *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (per curiam).

If substantial evidence supports the Commissioner's decision, a reviewing court must affirm the decision even if it would have decided the matter differently. *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (per curiam) (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam)). Moreover, the decision must be affirmed even if substantial evidence would also support the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). This "standard allows considerable latitude to administrative

decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id*. (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). In determining whether substantial evidence supports the ALJ's findings in the instant matter, however, the Court must examine the record as a whole and take into account what fairly detracts from its weight. *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

For the Commissioner to find that a plaintiff suffers from a disability for which she should receive benefits, the plaintiff must be unable to engage in any substantial gainful activity due to the existence of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

## II. Analysis

### A. Background

The Court adopts and incorporates the recitation of the factual and treatment history from the R&R. (R. 11). As is relevant here, the ALJ found that among other impairments, Plaintiff had the severe impairment of "osteoarthritis of the bilateral knees, status-post right knee arthroscopy and left knee meniscal repair [hereinafter, collectively, the 'knee impairment']." (R. 6, PageID# 135, Tr. 108). He determined that Plaintiff had the residual functional capacity (RFC) to perform light work

> except that [she] may occasionally operate foot controls with the bilateral lower extremities; … may frequently balance, occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; … must

3

>avoid concentrated exposure to extreme cold, vibration and loud noise, and must avoid all exposure to unprotected heights, moving mechanical parts[,] and commercial driving; [she] is able to perform a wide variety of simple-to-complex tasks, but is limited to the performance of these tasks in a work setting that requires no high production rate pace [as is found in assembly line work], which setting is routine, in that it contemplates occasional changes.

(*Id.* at PageID# 138, Tr. 111). In making this determination, the ALJ considered the medical-opinion evidence in the record, Plaintiff's subjective statements, and some of the objective medical evidence in the record. (*See id.* at PageID# 139–44, Tr. 112–17).

In his discussion of the objective medical evidence, the ALJ did not mention the October 20, 2021, physical examination findings. (*See id.* at PageID# 139–40, Tr. 112–13). This examination found that Plaintiff had trace effusion, positive crepitus, and decreased range of motion bilaterally in her knees. (*Id.* at PageID# 1221, Tr. 1194). Her left knee also had "tenderness to palpation along the medial joint line and mild tenderness along the lateral joint line," "pain surrounding the medial and lateral border of the patella," and positive McMurray's sign that "reproduce[d] her pain." *Id.* Her right knee had "mild pain associated with McMurray's exam." *Id.* She had "an antalgic gait." *Id.*

However, the ALJ discussed diagnostic imaging results from that same day and from November 2, 2021. (*Id.* at PageID# 139, Tr. 112). The October X-rays of the left knee showed "varus alignment with medial joint space narrowing, osteophyte formation consistent with mild to moderate medial compartment osteoarthritis," and "moderate joint space narrowing with osteophyte formation and subchondral sclerosis" in the patellofemoral compartment. (*Id.* at PageID# 1222, Tr. 1195). X-rays of the right knee showed "severe patellofemoral arthritis with near bone-on-bone of the lateral joint space of the patellofemoral compartment with osteophyte formation and subchondral sclerosis." *Id.* They also showed that Plaintiff's "medial and lateral

4

joint line appear[ed] overall well-maintained" but had "osteophytes off of the medial and lateral tibial plateau and the medial lateral femoral condyle." *Id.* The November MRI showed "[u]ndersurface and free edge tear posterior body medial meniscus"; "[t]ricompartment arthropathy"; cartilage ulceration that was "most conspicuous" in the medial femoral condyle, tibia, and medial and lateral trochlea; "[a]ctive subcortical marrow reaction"; capsulosynovitis; and "[d]ebris within the joint space." (*Id.* at PageID# 1228, Tr. 1201).

Nevertheless, the ALJ concluded that the record as a whole did not support the contention that Plaintiff's knee impairment would be work preclusive. (*Id.* at PageID# 139, Tr. 112). He reasoned that "[c]linical examinations included in the record ha[d] consistently, albeit not universally, reported either mildly adverse[] or benign findings." (*Id.* at PageID# 140, Tr. 113). When finding the state agency medical consultants' opinions persuasive, he reasoned, as relevant here, that "[c]linical examinations ha[d] consistently reported preserved strength and neurological function, including gait and coordination." (*Id.* at PageID# 143, Tr. 116).[1]

Plaintiff's Brief on the Merits set forth one assignment of error: that the ALJ's RFC determination that Plaintiff could perform light work was not supported by substantial evidence. (R. 7, PageID# 1384). Specifically, Plaintiff argues that the ALJ did not adequately evaluate her knee impairment because he did not discuss the October 20, 2021, physical examination findings. (*Id.* at PageID# 1386). Plaintiff argues that because the ALJ did not discuss these findings in combination with later October and November 2021 diagnostic imaging, he "failed to acknowledge the overall worsening of [her] condition." (R. 9, PageID# 1401). Plaintiff contends

---

1 The state agency medical consultants rendered their opinions on April 16, (*Id.* at PageID# 341–43, Tr. 314–16), and September 2, 2021, (*Id.* at PageID# 362–63, Tr. 335–36), five months and one month before the October physical examination and X-rays of Plaintiff's knees, respectively.

that if properly evaluated, her knee impairment would be incompatible with "the standing and walking required of light work activity." (R. 7, PageID# 1384–87).

The Magistrate Judge recommended vacating the ALJ's decision and remanding the matter for further proceedings consistent with the R&R. (R. 11, PageID# 1404). The R&R noted that the ALJ "did not address the abnormal physical examination findings from October 2021." (*Id.* at PageID# 1421). The R&R concluded that this omission "deprive[d] [the ALJ's] RFC finding of the support of substantial evidence because it is not clear that the ALJ considered the record as a whole in adopting the RFC and because his RFC finding failed to 'build an accurate and logical bridge between the evidence and the result.'" (*Id.* at PageID# 1424 (quoting *Fleishcer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011))). It reasoned that by failing to "address specific details … that [we]re suggestive of worsening over time," the ALJ "selectively parsed the medical records and failed to build a logical bridge between the evidence and the result." (*Id.* at PageID# 1425).

**B. Objections**

The Commissioner first objects to the Magistrate Judge's "conclusion that the ALJ's omission meant he 'selectively parsed' the record." (R. 12, PageID# 1429). The Commissioner argues that the Court should not adopt this conclusion because failing to mention certain evidence does not necessarily mean that the ALJ engaged in cherry picking and courts should be skeptical of the concept of cherry picking. (*Id.* at PageID# 1429–30). The Commissioner notes that the ALJ cited the "visit report by its administrative exhibit number and page, showing he had reviewed its contents." (*Id.* at PageID# 1431). Finally, the Commissioner asserts that the ALJ accurately characterized the medical evidence because he used a qualifier to explain that Plaintiff's medical records "consistently 'albeit not universally' were mild and benign." *Id.*

6

(quoting R. 6, PageID# 140, Tr. 113).

This objection is unavailing. The Commissioner is correct that an ALJ need not discuss "all the evidence submitted" and that "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). Nevertheless, as discussed and explained in the R&R, (R. 11 PageID# 1424), an ALJ must build "an accurate and logical bridge between the evidence and the result," *Fleischer*, 774 F. Supp. 2d at 877, and "may not overlook or ignore contrary lines of evidence," *Knott v. Kijakazi*, No. 3:22cv2149, 2023 WL 5044434, at *13 (N.D. Ohio June 22, 2023) (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008)).

Here, a fundamental tension exists between the ALJ's conclusions and the October 20, 2021, physical examination findings. The ALJ concluded that although the diagnostic imagery "would be consistent with the claimant's allegations of knee pain, the record, when considered as a whole, [wa]s not supportive of the contention that the existence of [the knee impairment] would be preclusive of all types of work." (R. 6, PageID# 139, Tr. 112). The ALJ reasoned that "[c]linical examinations included in the record ha[d] consistently, albeit not universally, reported either mildly adverse[] or benign findings." (*Id.* at PageID# 140, Tr. 113). He ultimately found that Plaintiff was able to perform the standing and walking requirements of light work. (*See id.* at PageID# 138, Tr. 111). With this reasoning, the ALJ treated the October physical examination findings as an anomaly in a record of largely normal findings. This is a crucial error. These contemporaneous findings support the diagnostic imagery that the ALJ noted "would be consistent with the claimant's allegations of knee pain." (*See* R. 6, PageID# 139, Tr. 112). These findings also link the earlier "mildly adverse[] or benign findings," (*id.* at PageID# 140, Tr. 113),

7

to the later significant diagnostic imagery in a pattern suggestive of escalating impairment. Thus, these findings cannot accurately be treated as anomalous—instead, they could suggest that Plaintiff's condition worsened during the relevant period. By failing to discuss these findings, the ALJ failed to reconcile evidence potentially suggesting that Plaintiff's knee impairment worsened with his conclusions regarding the record evidence and RFC finding. *See Renner v. Comm'r of Soc. Sec.*, No. 5:18cv1669, 2019 WL 3430136, at *2 (N.D. Ohio July 30, 2019). Furthermore, by failing to discuss these findings, the ALJ improperly "overlook[ed] or ignore[d] contrary lines of evidence." *See Knott*, 2023 WL 5044434, at *13. This evidence was contrary to his reasoning that despite the significant diagnostic imaging findings, the record as a whole demonstrated consistently mild or benign findings with only anomalous exceptions. Ultimately, because the ALJ failed to address the conflict between this evidence and his characterizations and conclusions, he failed to build the requisite accurate and logical bridge between the evidence and the result. *See Fleischer*, 774 F. Supp. 2d at 877; *cf. Renner*, 2019 WL 3430136, at *2 (concluding that the ALJ's RFC finding that the plaintiff could perform the standing and walking required of light work was not supported by substantial evidence because the ALJ mentioned but did not analyze one provider's evaluation, "treatment records[,] and objective medical testing").

These errors are problematic. The October 2021 physical examination findings are "clearly material to [Plaintiff's] ability to stand or walk for prolonged periods of time in a work setting." *See Johnson v. Comm'r of Soc. Sec.*, No. 2:16cv172, 2016 WL 7208783, at *5 (S.D. Ohio Dec. 13, 2016). If these findings had been adequately considered, the ALJ might have concluded that Plaintiff's worsening knee impairment limited her to sedentary work rather than light work. The VE testified that if Plaintiff were limited to sedentary work, she would be precluded from her past relevant work and would have no skills transferrable to sedentary work.

(R. 6, PageID# 331–32, Tr. 304–05). As "an individual closely approaching advanced age," 20 C.F.R § 404.1563(d), if Plaintiff were limited to sedentary work, that would impact the underlying disability determination under the pertinent regulations, *see* 20 C.F.R. Part 404, subpart P, Appendix 2, Table 1, Rule 201.14. As such, remand is required, although this decision should not be construed as the Court expressing any views regarding the merits of Plaintiff's underlying claims or the Commissioner's determination upon remand.

The Commissioner's second objection is that other aspects of the ALJ's analysis "not discussed in significant detail by the Magistrate Judge" "helped support" the RFC finding. *Id.* These additional aspects are that Plaintiff engaged in substantial gainful activity for the first nine months of the relevant twenty-three-month period, walked for exercise three to four times a week "for fifteen to thirty minutes at a time" in April 2021, noted that she gardened on one occasion in September 2021, and had "lengthy gaps" in her treatment as well as the fact that when the agency medical consultants reviewed Plaintiff's record in April and September 2021, they opined that she "retained the ability to perform light work." (*Id.* at PageID# 1431–33). This objection is similarly unavailing. That Plaintiff engaged in more activity earlier in the relevant period and began engaging in decreasing amounts of activity over the course of the relevant period, (*compare id.* at PageID# 135, Tr. 108 (Plaintiff worked for the first nine months of the twenty-three-month period), *with id.* at PageID# 832, Tr. 805 (in April 2021, Plaintiff noted to her doctor that she was walking for exercise three or four times a week for sixteen to thirty minutes at a time), *and id.* at PageID# 1138, Tr. 1111 (at the emergency room in September 2021, Plaintiff mentioned that she was gardening before developing a rash)), like the omitted physical examination findings, could be suggestive of the knee impairment worsening. That the agency medical consultants opined before October 2021 that Plaintiff could perform light work

does not suggest that Plaintiff remained able to do so from October 2021 onward, particularly in the face of evidence suggesting that Plaintiff's knee impairment worsened over time. Without discussing the October 2021 findings and their interaction with these other aspects of the record, these other aspects do not provide substantial evidence to support the RFC finding that Plaintiff could perform light work. Because he did not discuss the October 2021 physical examination findings, the ALJ failed to build an accurate and logical bridge between the other aspects of the record that he discussed and his RFC finding that Plaintiff was able to perform light work. *See Fleischer*, 774 F. Supp. 2d at 877. Thus, in the absence of discussion of the October 2021 physical examination findings, the ALJ's RFC finding is not supported by substantial evidence. Here too, this decision should not be construed as the Court expressing any views regarding the merits of Plaintiff's underlying claims or the Commissioner's determination upon remand.

### III. Conclusion

The Court has carefully reviewed the Report and Recommendation according to the above-referenced standard as well as the ALJ's decision and the Commissioner's objection. The Court agrees with the Magistrate Judge's resolution of the issues raised. Therefore, the Magistrate Judge's R&R, (R. 11), is hereby ADOPTED, and the Commissioner's objections, (R. 12), are OVERRULED. The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with the R&R.

IT IS SO ORDERED.

Date: September 27, 2024         s/ *David A. Ruiz*
                                 David A. Ruiz
                                 United States District Judge